1  **WO**

2

3

4

5

6          IN THE UNITED STATES DISTRICT COURT

7              FOR THE DISTRICT OF ARIZONA

8

9   Jacque Duhame,                          No. CV-23-02415-PHX-MTL

10              Plaintiff,                   **ORDER**

11  v.

12  Sanofi SA, et al.,

13              Defendants.

14

15         Before the Court is Plaintiff Jacque Duhame's Motion for Leave to File an Amended

16  Complaint (Doc. 20). The motion is fully briefed.[1] (Docs. 20, 21.) For the forthcoming

17  reasons, the Court denies Plaintiff's motion (Doc. 20).

18  **I.      BACKGROUND**

19         This case comes before the Court after being transferred from a multidistrict

20  litigation consolidation ("MDL") in the Eastern District of Louisiana. (Doc. 7.) More than

21  15,000 plaintiffs claim that Taxotere, a chemotherapy drug, causes permanent

22  chemotherapy induced alopecia ("PCIA") and that Defendants were aware of this side

23  effect but failed to warn patients. (Doc. 6-1 at 71-72.)

24         Plaintiff's operative pleadings include the second amended master complaint, (Doc.

25  6-4 at 342-411), and her short form complaint ("SFC"), (Doc. 1). The second amended

26  master complaint defined Plaintiff's injury as hair loss persisting six months after

27  completion of chemotherapy. (*Id.* at 377-78.) The SFC follows a standardized template,

28

---

[1] Plaintiff did not file a reply brief, and the deadline to do so has passed. *See* LRCiv 7.2(d).

1    including fill-in-the-blank spaces and check-boxes to identify the parties, jurisdiction,

2    venue, injuries, and claims incorporated from the master complaint. (Doc. 1.) Defendants'

3    operative pleading is its master answer. (Doc. 6-4 at 246-341.)

4           During the MDL proceedings in 2019, the MDL plaintiffs requested leave to file a

5    third amended complaint to redefine their alleged injury as "[t]here is no single definition

6    for [PCIA] and the amount of time to establish permanent hair loss varies from patient to

7    patient, including among [p]laintiffs." (Doc. 6-4 at 412, 458, 1425-26.) The MDL court

8    denied the motion reasoning that the parties and the MDL court had "been operating under

9    [p]laintiffs' original definition of their alleged injury" since 2017. (*Id.* at 1427-29.)

10          In May 2020, the MDL court issued Pretrial Order No. 105 ("PTO 105"), "Short

11   Form Complaint Allegations and Amendments – Statute of Limitations Order," in light of

12   the MDL court's rulings related to statute of limitations, *In re Taxotere (Docetaxel) Prods.*

13   *Liab. Litig.*, MDL No. 16-2740, 2019 WL 2995897 (E.D. La. July 9, 2019). (Doc. 6-2 at

14   167-171.) PTO 105 gave MDL plaintiffs the opportunity "to add factual allegations

15   regarding particularized facts individual and specific to each [p]laintiff's medical care and

16   treatment and/or that [p]laintiff's communications with medical professionals" within 180

17   days if the Order. (*Id.* at 167.) The parties later stipulated to extend the deadline to January

18   15, 2021. (*Id.* at 169-170.) Plaintiff did not amend her SFC before this deadline. (*See* Doc.

19   1; Doc. 20.)

20          After the completion of general discovery and bellwether trials, Plaintiff's case was

21   transferred out of the MDL court to this Court in October 2023. (Doc. 7.) The Transfer

22   Order provided that "[a]ll deadlines for [p]laintiffs to amend their individual complaints

23   without leave of court have passed." (Doc. 7 at 76.)

24          In January 2024, this Court held a scheduling conference and issued a scheduling

25   order setting deadlines for this specific case. (Docs. 15, 16.) The parties agreed to set the

26   deadline to file a motion to amend the pleadings to February 2, 2024, which the Court

27   entered in the case-specific Scheduling Order. (Doc. 14 at 10; Doc. 16 at 1.)

28          Plaintiff filed a timely motion to amend her complaint. (Doc. 20.) Defendants

1   oppose the motion. (Doc. 21.)

2   **II.   LEGAL STANDARD**

3       Under Rule 15, "[t]he court should freely grant leave [to amend] when justice so
4   requires." Fed. R. Civ. P. 15(a)(2). Leave may be denied, however, for reasons such as
5   "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to
6   cure deficiencies by amendments previously allowed, undue prejudice to the opposing
7   party by virtue of allowance of the amendment, [or] futility of amendment." *Foman v.*
8   *Davis*, 371 U.S. 178, 182 (1962). The Ninth Circuit has held that prejudice to the opposing
9   party is the strongest factor and that absent prejudice, or "a strong showing" of the other
10  factors, a "presumption" exists in favor of granting the leave to amend. *Eminence Cap.,*
11  *LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

12  **III.   ANALYSIS**

13      Plaintiff requests leave to file an amended complaint under Rule 15, Fed. R. Civ. P,
14  so she can allege facts specific to her. (Doc. 20 at 5.) Plaintiff argues she was unable to
15  allege case-specific facts because she was "beholden to the master complaint, incorporated
16  by reference into the MDL's standardized SFC." (*Id.* at 3.) Plaintiff's amendments fall into
17  the following categories: "(1) to provide case-specific facts supportive of Plaintiff's claims
18  in compliance with Fed. R. Civ. P. 8; (2) to clarify an important issue in this case
19  concerning when Plaintiff knew of the link between her permanent hair loss and
20  Defendants' actionable conduct; (3) to plead claims and allegations specific to the
21  underlying substantive law; and (4) to narrow the issues and omit allegations related to
22  other MDL defendants and plaintiffs that are not parties in this matter." (*Id.* at 7.)

23      Defendants argue that under the law of the case doctrine, this Court should leave the
24  MDL court's rulings intact as other transferor courts have done. (Doc. 21 at 2.) Defendants
25  maintain that the MDL scheduling order provided an opportunity for Plaintiff to amend her
26  SFC to include her case-specific facts and that deadline has passed. (*Id.* at 2-5.) Defendants
27  also argue that allowing Plaintiff to amend her pleading now "would fundamentally alter
28  this litigation and severely prejudice" Defendants. (*Id.* at 5-10.)

Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). Although this Court has discretion to reconsider previous rulings, it "should be loath to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (cleaned up). In the context of transfer from an MDL court, "exceptions to the law of the case principle should be especially rare . . . because refusal to follow the previous ruling would result in the sort of piecemeal decision making that MDL centralization is intended to avoid." Wright & Miller, 15 Fed. Prac. & Proc. Juris. § 3867 (4th ed., Apr. 2023 Update). "If transferor judges were permitted to upset the rulings of transferee judges, the result would be an undermining of . . . Section 1407 [of Title 28 U.S.C.] for coordinated or consolidated pretrial proceedings because those proceedings would then lack the finality . . . requisite to the convenience of . . . parties and to efficient conduct of actions." Stanley A. Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts*, 78 F.R.D. 575, 577 (1978).

Here, Plaintiff's proposed amended complaint violates the MDL court's prior Orders. Plaintiff's proposed amended complaint changes the claims originally alleged and includes (1) factual allegations specific to her medical care, treatment, and communications with medical professionals, (2) factual allegations to establish equitable tolling, and (3) excludes the six-month injury definition. (*See* Doc. 21-1.)

The MDL court's December 12, 2019 Order rejected the request to change the injury definition when it denied the MDL plaintiffs' motion to file a third amended master complaint. (Doc. 6-4 at 1425-29.) Plaintiff does not argue that the MDL court erred in denying the amendment. (*See* Doc. 20.) Allowing Plaintiff to amend her complaint now so that it no longer includes an injury definition would violate the MDL court's prior order, disrupting the law of the case, and be unduly prejudicial to Defendants. *See Jean Anderson v. Sanofi-Aventis U.S. LLC et al.*, 2024 WL 1601869, at *2-3 (C.D. Cal. Jan. 19, 2024)

(denying a different MDL plaintiff's motion for leave to amend the injury definition finding allowing the amendment would be "unduly prejudicial" to defendants); *Carol Allain v. Sanofi-Aventis U.S. LLC*, 2024 WL 1641747, at \*1-\*2 (M.D. Fla. Feb. 26, 2024) (same).

Plaintiff also argues that this stipulation put a "pin" in the issue of amendment, meaning that PTO 105 does not preclude her from seeking to amend her SFC now. (Doc. 20 at 4.) When extending the deadline for PTO 105, the parties stipulated that:

> 2. Plaintiffs agree not to seek leave to amend SFCs to add or include any allegations that are inconsistent with PTO 105 or this Court's Orders addressing motions to amend SFCs, including any allegations that have been previously disallowed by the Court;

> 3. If a Defendant seeks dismissal of any case based on a statute of limitations, it agrees that it will not argue waiver based on any Plaintiff's refraining from amending her SFC to include allegations inconsistent with PTO 105, as described in paragraph 2 hereinabove;

(Doc. 6-2 at 169.)

This stipulation may allow amendments inconsistent with PTO 105, because Defendants agreed to "not argue waiver based on any Plaintiff's refraining from amending her SFC to include allegations *inconsistent with PTO 105*." (Doc. 6-2 at 169.) Plaintiff's proposed amended complaint, however, includes the types of amendments contemplated by PTO 105. Pursuant to PTO 105, Plaintiff had the opportunity to add factual allegations specific to her medical care, treatment, and communications with medical professionals— including factual allegations of discovery of injury to allege statute of limitations tolling. (*See* Doc. 6-2 at 167.) Allowing Plaintiff to make such amendments at this late stage, more than 3-years after the deadline, would be prejudicial to Defendants. Plaintiff has not explained why she did not make these amendments when given the opportunity to do so before the January 2021 deadline. (*See* Doc. 20.)

Moreover, as discussed at the January 18, 2024 scheduling conference, Defendants do not intend to challenge Plaintiff's pleadings but instead anticipate seeking summary

1    judgment based on the case-specific discovery to challenge statute of limitations. (Doc. 15

2    at 15.) Plaintiff also conceded that by virtue of Arizona law that discovery would be

3    necessary to determine statute of limitations, making it a summary judgment issue. (*Id.* at

4    3-4.) Without a better explanation of why amendment is necessary and why she did not

5    comply with PTO 105 by amending her pleading before January 15, 2021, the Court is

6    unpersuaded that Plaintiff's amendment is appropriate now. *See Jean Anderson*, 2024 WL

7    1601869, at *3-*4.

8    **IV.    CONCLUSION**

9           Accordingly,

10          **IT IS ORDERED denying** Plaintiff's Motion for Leave to File an Amended

11   Complaint (Doc. 20).

12          Dated this 30th day of April, 2024.

13

14

15                                    Michael T. Liburdi
                                      United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28